UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SANDRA EDICK, individually and as Special Administrator for the Estate of PHILLIP EDICK, deceased,<br><br>Plaintiff,<br><br>v.<br><br>ALLEGIANT AIR, LLC, et al.,<br><br>Defendants. | 2:11-CV-259 JCM (GWF) |

### ORDER

Presently before the court is plaintiffs Sandra Edick and Phillip Edick's motion for remand. (Doc. #9). Defendant Allegiant Air, LLC, filed an opposition (doc. #13) and the declaration of Gary Arthur Clarke in support of its opposition (doc. #14). To date, plaintiffs have not filed a reply.

Plaintiffs filed their complaint (attached to the notice of removal doc. #1) in the Eighth Judicial District Court of Clark County, Nevada, on or about October 22, 2010, alleging that defendants Allegiant Air and Clark County Department of Aviation's (hereinafter "Department of Aviation") negligence caused injuries to Mr. Edick. Defendant Allegiant Air filed its notice of removal pursuant to 28 U.S.C. § 1331, 1441 and 1446 (doc. #1) on February 15, 2011. Defendant Department of Aviation did not file a joinder, but its counsel confirmed that it did not oppose the removal, as is noted in the notice of removal (doc. #1).

**Motion to Remand**

In the present motion to remand (doc. #9), plaintiffs assert that the action should be remanded

**James C. Mahan**
**U.S. District Judge**

1  because "the parties are not diverse and the case is not an issue of Federal law." In the notice of
2  removal (doc. #1), Allegiant Air asserted that "plaintiffs' claims are exclusively governed by the
3  Federal Civil Aviation Security Regulations, in particular, Title 49 C.F.R. sections 1520, 1544 et
4  seq." (Doc. #1). Further, Allegiant Air asserted that the allegations that it acted negligently when it
5  refused to allow plaintiff Mrs. Edick to check her husband's bags "necessarily invoke the exclusive
6  regulation of aviation security governed by the Transportation Security Administration, and it is
7  therefore subject to Federal preemption." *Id.*

8        Plaintiffs assert that such allegations were "made nowhere in [p]laintiffs' [c]omplaint," and
9  that the complaint contained no allegations "that the Edick's [sic] wanted, or didn't want, to leave
10 their luggage unattended." (Doc. #9). Further, plaintiffs assert that they are "not alleging that the
11 regulations requiring the passenger to be present when checking in the bags are in any way
12 unreasonable or the cause of [p]laintiff's injuries." (Doc. #9). Plaintiffs assert that the claims of
13 negligence fall under state law, and that under the present allegations, no federal question is
14 involved.

15       Contrary to plaintiffs' assertions, the complaint (attached to the notice of removal doc. #1)
16 contains several allegations relating to the Edicks checking their luggage. Specifically, at page two
17 of the complaint, plaintiffs assert that Mrs. Edick left her husband "to take the bags over to the
18 airline counter and check them in so that she could return to assist her husband to the airline
19 counter." *Id.* Further, plaintiffs also assert that Mrs. Edick "informed the check-in personnel that she
20 was checking in the bags for the flight and was informed by the agents of [d]efendant...that [Mr.
21 Edick] had to be there in order to check in the luggage." *Id.* Additionally, plaintiffs assert in the
22 complaint that Mrs. Edick "reminded agents...that [Mr. Edick] was traveling under a handicapped
23 ticket and that he had already fallen in the parking garage and that was why the bags needed to be
24 checked in because [he] needed assistance to get from the parking garage to the airline check-in."
25 *Id.* Lastly, the complaint alleges that plaintiff Mrs. Edick was "ordered to take the luggage back with
26 her, go get her husband, and bring him inside the [t]erminal." *Id.*

27       Plaintiffs assert that the defendant knew that Mr. Edick was handicapped and needed a
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

wheelchair, but that they did "not offer to make reasonable accommodation to provide a wheelchair" where he was waiting, and that it wasn't until Mrs. Edick brought him through the terminal and he fell, that they attended to him. Further, plaintiffs assert that Mr. Edick "fell, face first, just inside the airline door," "was knocked [] unconscious," and "knocked his front tooth completely out," "cut open his cheek, and had blood coming out of his mouth." *Id.*

These allegations are in fact contained in the complaint, and the actions or inactions of the employees do, as defendant asserts, constitute "service[s] of [an] air carrier that may provide air transportation under [The Airline Deregulation Act of 1978, 49 U.S.C. Section 41713] pursuant to the tickets they purchased." (Doc. #13).

### A.     Federal Administration Agency

With regards to aviation safety in this country, the court in *Montalvo v. Spirit Airlines,* 508 F.3d 464 (9th Cir. 2007) held that "Congress intended that there be a single, uniform system for regulating aviation safety, and that the organization to oversee that system was the [Federal Administration Agency] (hereinafter "FAA")." Further, the court held that the administrator of the FAA "has chosen to exercise this authority by issuing such pervasive regulations that we can infer a preemptive intent to displace all state law on the subject of air safety." *Id.* These regulations include a general federal standard of care for airport operators, and specifically, regulations governing "the warnings and instructions which must be given to airline passengers. *See* C.F.R. pt. 25 (2005); 14 C.F.R. pt. 121 (2005)."*Id.* at 472.

### B.     The Transportation Security Administration

The Transportation Security Administration (hereinafter "TSA") developed regulations for airports and air carriers regarding security requirements in the form of 49 CFR "Transportation," Subtitle B "Other Regulations Relating To Transportation," Chapter XII "Transportation Security Administration, Department of Homeland Security," Subchapter C- "Civil Aviation Security." Subchapter C, Section 1540 (doc. #13 Exhibit B) establishes that the regulations "apply to persons engaged in aviation-related activities," and defines the term "checked baggage" to mean "property tendered by or on behalf of a passenger and accepted by an aircraft operator for transport."

James C. Mahan
U.S. District Judge

- 3 -

Further, and most pertinent to the present motion, Subchapter C, Part 1544.203 titled "Acceptance and Screening of Checked Baggage" sets forth what procedures an aircraft operator must use "to prevent or deter carriage of any unauthorized explosive or incendiary onboard aircraft in checked baggage," and that it must "ensure that all checked baggage is inspected," must "control checked baggage," and "must refuse to transport any individual's checked baggage or property if the individual does not consent to a search or inspection of that checked baggage." (Doc. #13 Exhibit C).

### C. Declaration of Gary Arthur Clarke

Defendant provided the court with the declaration of the director of security for Allegiant Air, Gary Arthur Clarke (doc. #14). In the declaration, Clarke asserts that the actions of Allegiant Air employees are governed by the regulations previously mentioned, and that they essentially "tie the hands of [Allegiant] and its employees as to what they can or cannot do in any situation, including those related to *customer/baggage check-in.*" (Emphasis added). Further, Clarke demonstrates how each employee involved in "security related duties (including those at the check-in counter) [is] required to undergo training pursuant to 49 CFR, Part 1544, Subpart C, Section 1544.235," and that procedures for checking baggage and policies relating to unattended baggage are topics covered in this training.

### D. Conclusion

Under 28 U.S.C. § 1441(b), this court has original jurisdiction over claims that turn on a substantial question of federal law. *Ultramor America, Ltd. v. Dwell,* 900 F.2d 1412, 1414 (9th Cir. 1990). Federal jurisdiction exists where a plaintiff's claims, on their face, appear to rely on state law, but the rights he possesses are actually based on federal law. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1211-12 (9th Cir. 1980).

As discussed above, plaintiffs' complaint (attached to the notice of removal doc. #1) contains several allegations relating to checking baggage and the procedures/policies that the Allegiant Air employee adhered to. The actions of the employee as asserted in the complaint squarely fall within the safety regulations developed by TSA, and under the "preemptive intent" articulated in *Montalvo*,

**James C. Mahan
U.S. District Judge**

- 4 -

1 any claim arising out of these actions is exclusively governed by those federal regulations. 49 CFR, Subtitle B, Chapter XII, Subchapter C, Part 1544.203; *Montalvo,* 508 F.3d 464 (holding that federal regulations "displace all state law on the subject of air safety."). Therefore, the case is properly before this court, and remand is not warranted. 28 U.S.C. § 1441(b); *Ultramor America, Ltd.,* 900 F.2d 1412, 1414.

Accordingly,

IT IS HEREBY ORDERED ADJUDGED AND DECREED that plaintiffs Sandra Edick and Phillip Edick's motion for remand (doc. #9) be, and the same hereby is, DENIED.

DATED April 12, 2011.

**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 5 -